# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JESUS M. RIVERA and
PERRY D. BLACK

**MAGISTRATE JUDGE ASHMAN**

CRIMINAL COMPLAINT

CASE NUMBER:

**08CR 0052**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __January 18, 2008__ in __Cook__ County, in the __Northern__ District of __Illinois__ defendants,

attempted to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841 (a)(1);

in violation of Title __21__ United States Code, Section __846__.

I further state that I am a __Special Agent with the Drug Enforcement Administration__ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof: __X__ Yes ____ No

**FILED**
JAN 22 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Owen J. Putman, Complainant

Sworn to before me and subscribed in my presence,

January 22, 2008
Date

at Chicago, Illinois
City and State

U.S. Magistrate Judge Martin C. Ashman
Name & Title of Judicial Officer

Signature of Judicial Officer

| COUNTY OF COOK | ) | |
|---|---|---|
| | ) | SS |
| STATE OF ILLINOIS | ) | |

## AFFIDAVIT

I, Owen J. Putman, being duly sworn on oath, state as follows:

1.    I have been employed as a Special Agent within the Department of Justice, Drug Enforcement Administration, ("DEA") since February 1990. I am currently assigned to the DEA/High Intensity Drug Trafficking Area ("HIDTA") Task Force in Chicago, Illinois. As a law enforcement officer, I have attended specialized training pertaining to violations and enforcement of the Controlled Substances Act. During my employment as a DEA Special Agent, I have been involved in numerous investigations related to violations of the controlled substance laws.

2.    The information contained in this affidavit is based upon my personal knowledge, my conversations with other law enforcement officers and individuals, and my review of investigative reports and other documents. This affidavit is made for the limited purpose of establishing probable cause in support of a criminal complaint against JESUS M. RIVERA and PERRY D. BLACK for a violation of Title 21, United States Code, Sections 841(a)(1) and 846. Because this affidavit is for the limited purpose of establishing probable cause, it does not contain all of the information known to me concerning this investigation.

3.    On Thursday, January 17, 2008, a Cooperating Source (CS) advised the DEA that he/she knew an individual, known to the CS only as "Billy," who was subsequently identified as RIVERA. The CS further advised the DEA that he/she knows RIVERA to be involved in the distribution of cocaine and that has previously sold kilograms of cocaine to RIVERA. According to the CS, on Thursday morning the CS had contacted RIVERA and told him that he/she had between

100 to 150 hours of work. In my experience, "hours of work" is known to be a coded reference to kilograms of cocaine. According to the CS, RIVERA told the CS that he had just gotten some work. The CS and RIVERA agreed to meet later that day at approximately 5:00 p.m. in the vicinity of Humboldt Park in Chicago, Illinois.

4.  On the same day, at approximately 5:30 p.m., the CS placed a consensually monitored phone call to RIVERA and advised him that he was running late.[1] At approximately 7:00 p.m., after being provided with a digital recorder and body wire, the CS placed a consensually monitored phone call to RIVERA and advised him that he was around the corner. Agents observed RIVERA arrive driving a Ford SUV bearing Illinois vehicle registration 1605999, which the CS entered and met with RIVERA. Agents continuously surveilled the CS and RIVERA during this meeting, during which the CS told RIVERA that the price was $18,500 per kilogram. RIVERA told the CS that he could come up with the money for two or three kilograms. RIVERA told the CS that he would call the CS later that night, to confirm that he had the money.

5.  According to the CS, later that night, RIVERA called the CS. During that conversation, which was consensually recorded, the CS told RIVERA that if he purchased five kilograms of cocaine, the CS would sell them to RIVERA for a price of $18,000 per kilogram. In my experience, a price of $18,000 per kilogram is within the range of the market price for a kilogram of cocaine, which fluctuates. RIVERA told the CS that he would try to get the money and that he would call the CS at around eleven or twelve the next day.

6.  On Friday, January 18, 2008, at approximately 12:00 p.m., RIVERA placed a consensually recorded phone call to the CS and told him that he was meeting with people to gather

---

[1] The government does not rely upon the statements of the CS for purposes of establishing probable case. The statements of the CS are provided for background purposes only. All further descriptions are based upon the observations of law enforcement personnel.

the money and that he would call the CS back in approximately 45 minutes.

7. Later that day, RIVERA placed a consensually recorded phone call to the CS and told him that he wanted to meet with the CS first in person. The CS and RIVERA agreed to meet at Hooters restaurant, which is located at 8225 W. Higgins, Chicago, Illinois. Prior to the meeting, the CS was provided with a digital recorder and body wire. Agents observed RIVERA arriving at the Hooters driving a Ford SUV bearing Illinois vehicle registration 1605999. Agents observed RIVERA and the CS meet at Hooters and then go to the CS's hotel room, which was located in the Chicago O'Hare Garden Hotel, 8201 W. Higgins, Chicago, Illinois.

8. Inside the CS's hotel room, the CS and RIVERA had a meeting that was consensually video recorded. During the meeting, the CS showed RIVERA five kilograms of cocaine, which RIVERA examined. RIVERA then asked the CS if the quality was good. RIVERA then cut into one of the kilograms and tasted the cocaine. RIVERA then told the CS that he would call someone, who was subsequently identified as BLACK, to bring the money.

9. After RIVERA left the CS's hotel room, RIVERA placed a phone call that was consensually recorded to the CS and told him/her that he was going to wait for BLACK in the hotel lobby. RIVERA subsequently placed a phone call that was consensually recorded to the CS and told him that BLACK was going to purchase two kilograms. RIVERA told the CS that the CS knows BLACK and that BLACK used to be "Beto's" client and that he used to be the CS's client also. RIVERA also told the CS that BLACK works security and has a permit to carry a gun.

10. RIVERA told the CS that he (RIVERA) will meet BLACK at Hooters and get the money from him and then bring the money to the CS.

11. BLACK arrived at the hotel carrying a backpack. RIVERA and BLACK met and went to the CS's hotel room. Inside the CS's hotel room, RIVERA, BLACK, and the CS had a

meeting that was consensually video recorded. During the meeting, BLACK emptied the money, which was inside the backpack that he was carrying, onto the bed. BLACK told RIVERA and the CS that there was approximately $44,000. All three individuals began counting the money. While they were counting the money, BLACK told RIVERA that he had money for five more for tomorrow. The CS then told RIVERA and BLACK that the cocaine was downstairs and that he would have to get it. After the CS left the hotel room, RIVERA and BLACK were arrested.

12.     Subsequent to RIVERA's arrest, he provided agents with an Illinois Driver's license in the name of Jesus M. RIVERA. At that time, RIVERA told agents that Jesus RIVERA was his true name and that "Billy" was another name that he went by.

13.     After having been read his Miranda rights and waiving them, BLACK stated that he was there to purchase two kilograms of cocaine for $44,000. BLACK further stated that it was his intention to order five kilograms from the CS for the next day and then take them from him.

14. Based on the foregoing, I believe there exists probable cause to believe that JESUS M. RIVERA and PERRY D. BLACK attempted to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a) (1).

FURTHER AFFIANT SAYETH NOT.

Owen J. Putman, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence
This 22nd day of January, 2008

MARTIN C. ASHMAN
United States Magistrate Judge